UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ENDURANCE AMERICAN INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> JOHN MORIARTY & ASSOCIATES, INC.; JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.; AMERICARIBE-MORIARTY JV, a Joint Venture; and XL SPECIALITY INSURANCE CO., <br><br> Defendants. | No. 1:23-cv-12550-JEK |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO TRANSFER OR STAY**

**KOBICK, J.**

The plaintiff in this action, Endurance American Insurance Company, seeks a declaratory judgment that it has no duty under certain excess commercial general liability policies to defend or indemnify three of the defendants, a group of affiliated construction companies, in a suit currently pending in Florida state court. Before the Court is a motion by those defendants—John Moriarty & Associates, Inc.; John Moriarty & Associates of Florida, Inc.; and Americaribe-Moriarty JV—to transfer this case to the United States District Court for the Southern District of Florida under 28 U.S.C. § 1404(a) or, in the alternative, to stay the case. For the reasons to be explained, the motion will be denied. The defendants have not met their burden to show that the interests of justice, or the other private and public interest factors that bear on the motion to transfer, favor the Florida forum over the Massachusetts forum.

## BACKGROUND

The following undisputed facts are drawn from the complaint and affidavits submitted by the parties. *See Curtis v. Galakatos*, 19 F.4th 41, 51 (1st Cir. 2021) (considering affidavits in the similar forum non conveniens context).

Endurance is an insurance company incorporated in Delaware with a principal place of business in New York. ECF 1, ¶ 3. Defendants John Moriarty & Associates, Inc. ("JMA") and John Moriarty & Associates of Florida, Inc. ("JMAF") are both incorporated and have their principal places of business in Massachusetts. *Id.* ¶¶ 6-7; ECF 23, at 2; ECF 43-1, at 2. Defendant Americaribe-Moriarty JV ("AMJV") is a joint venture between Americaribe, LLC and JMAF. ECF 1, ¶ 8. Americaribe, LLC's sole member resides in Florida. ECF 44. XL Specialty Insurance Company, named by Endurance as a nominal defendant, is incorporated in Delaware and has its principal place of business in Connecticut. ECF 1, ¶¶ 4-5.

In April 2012, AMJV was formed as a joint venture between JMAF and Americaribe to act as the general contractor for the Brickell City Center project in Miami, Florida. *Id.* ¶¶ 14-15. AMJV entered into a contract to serve as the general contractor for the Brickell City superstructure work in July 2013. ECF 25-2, ¶ 9. It retained subcontractors to perform that work. *Id.* ¶ 10. An expansive development, Brickell City Center takes up three city blocks and includes a hotel, condos, a retail complex, office towers, and garages. ECF 1, ¶¶ 15-16. The project was ceremonially completed in 2016, but construction continued beyond that year. *Id.* ¶ 17. The project was originally insured by owner-controlled insurance policies obtained by the owners with approximately $104 million in coverage. *Id.* ¶ 18; ECF 25-2, ¶ 11.

In January 2021, the owners of the Brickell City Project filed suit in Miami-Dade County Circuit Court against JMA, JMAF, AMJV, and several other defendants. ECF 1, ¶¶ 10, 19-20;

ECF 25-2, ¶¶ 14, 16; *see Brickell City Center Retail v. Arquitectonica Int'l Corp.*, No. 2021-001706-CA-01 (Fla. Cir. Ct., 11th Cir., Miami-Dade Cty.) ("Underlying Florida Action"). Their complaint alleges a range of construction defects, many of them related to water intrusion. ECF 1, ¶ 19. The owners are seeking damages in excess of the $104 million covered by the owner-controlled insurance policies. *Id.* ¶ 21; ECF 25-2, ¶ 11.

In January 2022, JMA, JMAF, and AMJV (the "JMA defendants") tendered the Underlying Florida Action to their insurance carriers, including Endurance, under their commercial general liability ("CGL") policies. ECF 1, ¶¶ 21, 33. From 2015 to 2019, Endurance had issued five multistate CGL insurance policies—referred to hereinafter as the "Endurance Policies"—to the JMA defendants. *Id.* ¶ 22. These excess policies generally follow form to the excess CGL policies issued by XL Specialty to the JMA defendants. *Id.* ¶¶ 22-26. The XL Specialty CGL policies, in turn, generally follow form to the non-excess CGL policies issued by Arch Insurance Company to the JMA defendants. *Id.* ¶¶ 21-32. Thus, Arch is the primary insurer, XL Specialty is the first excess insurer, and Endurance is the second excess insurer. ECF 31, at 5 n.3. The policies cover, as relevant here, "'bodily injury' or 'property damage'" insofar as that damage "is caused by an 'occurrence,'" which is, in turn, defined as "'an accident.'" ECF 1, ¶¶ 23-24, 26, 29, 32 (quoting the policies).

Responding to the tender by the JMA defendants, Endurance took the position that most, if not all, of the damages in the Underlying Florida Action were not covered by its policies. *Id.* ¶¶ 35-49. This position was conveyed by Endurance to the JMA defendants on January 23, 2023, and "was extended and refined by further correspondence dated July 13, 2023." *Id.* ¶ 34.

In October 2023, Endurance and the JMA defendants, together with other parties, attended a three-day, court-ordered mediation related to the Underlying Florida Action. ECF 32, ¶¶ 15-16.

3

After the first day of mediation, Endurance believed that mediation was likely to fail and, on October 26, 2023, filed this suit seeking a declaratory judgment that it has no duty to defend or indemnify the JMA defendants in the Underlying Florida Action. *Id.* ¶ 17; ECF 1. One day later, JMA, JMAF, AMJV, and Americaribe filed a lawsuit against Endurance in the Southern District of Florida, seeking a declaration that Endurance *does* owe a duty to defend and indemnify those entities in the Underlying Florida Action. *See* ECF 32, ¶ 20; *John Moriarty & Assocs., Inc. v. Endurance Am. Ins. Co.*, No. 23-cv-24123-PCH (S.D. Fla).

On February 2, 2024, the JMA defendants filed in this Court a motion to transfer venue to the Florida Court or, alternatively, to stay this case. ECF 24. Three days later, Endurance filed a motion in the Florida Court to transfer venue to this Court, or to dismiss or stay that case. *See* ECF 16, *John Moriarty & Assocs., Inc. v. Endurance Am. Ins. Co.*, No. 23-cv-24123-PCH (S.D. Fla). The Florida Court stayed its case pending resolution by this Court of the JMA defendants' motion to transfer. *See* ECF 32-20; ECF 25, *John Moriarty & Assocs., Inc. v. Endurance Am. Ins. Co.*, No. 23-cv-24123-PCH (S.D. Fla. Feb. 9, 2024).

## DISCUSSION

### I. **Subject Matter Jurisdiction.**

Before turning to the merits of the JMA defendants' motion to transfer or stay, the Court first explains why it has subject matter jurisdiction over this case. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004) (federal courts have an independent duty to police their jurisdiction); ECF 44. This action is premised on diversity jurisdiction under 28 U.S.C. § 1332(a). As a corporation, Endurance takes the citizenship of its principal place of business, New York, and its state of incorporation, Delaware. 28 U.S.C. § 1332(c)(1). It has named a defendant, XL Specialty, that is likewise incorporated in Delaware and has a principal place of business in Connecticut. Typically,

4

under the diversity jurisdiction statute, "diversity must be complete; that is, no plaintiff may be a citizen of the same state as any defendant." *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 695 (1st Cir. 2023). Thus, in the typical case, Endurance's choice to name XL Specialty as a defendant—where both entities are incorporated in Delaware—would thwart this Court's exercise of jurisdiction.

Endurance maintains, however, that XL Specialty is a nominal defendant whose citizenship should not be considered for the purposes of determining diversity jurisdiction. In assessing diversity jurisdiction, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Nominal parties generally include parties whose sole interest in a case is indemnifying a named party, *Lewis v. Clarke*, 581 U.S. 155, 167 (2017), or performing a ministerial act associated with the outcome, or those who are named to satisfy pleading rules, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92-93 (2005). In contrast, a defendant is not a nominal party if, for example, it will be liable for damages, *id.* at 93, or could have a favorable arbitration award vacated by an adverse judgment, *Bishay v. Am. Arb. Assoc.*, 221 F. App'x 3, 4 (1st Cir. 2007).

The Court agrees that XL Specialty is a nominal defendant in this case. A ruling from this Court on the proper interpretation of the Endurance Policies, even one that referenced language in the XL Specialty Policies, would not bind a different court in future litigation over the meaning of the XL Specialty Policies, which are different contracts and may have a different meaning despite similarities in the language. In addition, XL Specialty will not pay or receive damages, nor will any of its legal duties change, as a result of this case. While the Court questions why Endurance named XL Specialty as a defendant at all, it nevertheless concludes that XL Specialty has no legal

interest in the litigation and is not a real party to the controversy. Its citizenship, therefore, will not be considered for the purposes of, and thus does not defeat, diversity jurisdiction.

## II. Motion to Transfer Venue.

Under Section 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" if doing so advances "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). The statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In addition to the factors set forth in the statute, a court may consider the plaintiff's choice of forum, the connection of the forum state to the controversy, the law to be applied, and the public interest. *See, e.g.*, *First State Ins. Co. v. XTRA Corp.*, 583 F. Supp. 3d 313, 318 (D. Mass. 2022). There is a "strong presumption in favor of the plaintiff's choice of forum," and, in general, "'[w]here identical actions are proceeding concurrently in two federal courts . . . the first filed action is . . . preferred in a choice-of-venue decision.'" *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (quoting *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)). The burden is on the party seeking to transfer venue. *Id.*

The parties agree that this action "might have been brought" in the Southern District of Florida. 28 U.S.C. § 1404(a). The Court will therefore focus its analysis on whether the interests of justice and the convenience of the parties and witnesses, as well as the additional private and public interest factors, favor transfer. In the end, because each of the factors is neutral or favors Endurance, the JMA defendants have not carried their burden to demonstrate that transfer to the Southern District of Florida is warranted.

A. <u>First-to-File Rule and Plaintiff's Choice of Forum.</u>

The parties sharply dispute the applicability of the "first-to-file" rule to the JMA defendants' motion to transfer. Under that rule, "'where the overlap between two suits is nearly complete[,] the usual practice is for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action.'" *Jimenez v. Kohl's Dep't Stores, Inc.*, 480 F. Supp. 3d 305, 306 (D. Mass. 2020) (quoting *Thakkar v. United States*, 389 F. Supp. 3d 160, 170 (D. Mass. 2019)). This rule may not apply, however, "where (1) there are 'special circumstances' justifying an exception, such as where a party engages in misleading conduct to win a 'race to the courthouse'; and (2) the balance of convenience substantially favors the second-filed action." *OneBeacon Am. Ins. Co. v. Celanese Corp.*, No. 14-cv-13992-FDS, 2015 WL 1962168, at *6 (D. Mass. May 1, 2015) (citation omitted).

The parties agree that this case is the first filed, and the case in the Southern District of Florida is the second. They disagree, however, whether special circumstances warrant an exception to application of the first-to-file rule. In the JMA defendants' view, the only reason Endurance filed first in this Court was its unexpected gamesmanship, whereby it brought this lawsuit in the midst of the October 2023 court-ordered mediation in Florida. Endurance disputes this characterization, contending that it was well within its rights to file suit in its forum of choice when it appeared that the mediation would prove unsuccessful.

The Court need not resolve the parties' disagreement over the applicability of the special circumstances exception, because insofar as the first-to-file rule creates a presumption in favor of the Massachusetts forum, it carries little weight in the pending motion to transfer. That is so for a simple reason: Endurance has already received the benefit of the first-to-file rule. The second-filed suit in the Southern District of Florida has been stayed pending resolution of the JMA defendants'

7

motion to transfer here, after Endurance invoked the first-to-file rule in its own motion to transfer, dismiss, or stay *that* action. *See* ECF 16, 25, *John Moriarty & Assocs., Inc. v. Endurance Am. Ins. Co.*, No. 23-cv-24123-PCH (S.D. Fla); *cf. OneBeacon*, 2015 WL 1962168, at *7 ("The first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, *but also which forum should decide which forum is appropriate.* Courts in nearly every circuit have held that the court in which the second action was filed should generally defer to courts in the first-filed action." (emphasis added)). Because of the entry of that stay, Endurance's concerns about "wasted resources because of piecemeal litigation, the possibility of conflicting judgments," or the possibility "the courts may unduly interfere with each other's affairs" are misplaced. *TPM Holdings, Inc. v. Intra-Gold Industries, Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). This Court does not, therefore, accord the first-to-file rule weight in evaluating the JMA defendants' motion to transfer venue. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 903-04 (Fed. Cir. 2008) (at least where the cases are filed nearly simultaneously, the first-to-file rule plays little role in the transfer determination in the first-filed court).

Apart from the first-to-file rule, courts generally apply a "strong presumption in favor of the plaintiff's choice of forum" when considering a motion to transfer under Section 1404(a). *Coady*, 223 F.3d at 11. The weight accorded this factor varies, however, with the circumstances of the case. *See Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 5 (D. Mass. 1987). The presumption carries less weight when the plaintiff is not a resident of the forum state or where the operative facts of the case have little connection to the plaintiff's chosen forum. *See id.*; *First State*, 583 F. Supp. 3d at 318-19; *accord Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 141 (1st Cir. 2021) (similar rule in the forum non conveniens context). As a company incorporated in Delaware and headquartered in New York, Endurance has not "filed suit on its 'home turf,'" but it has filed suit

in a forum that, as will be discussed, has a connection to the operative facts of this case. *Federal Ins. Co. v. XTRA Intermodal, Inc.*, No. 14-cv-14010-ADB, 2015 WL 4275181, at *4 (D. Mass. July 15, 2015). Thus, Endurance does not enjoy a strong presumption in favor of its choice of the Massachusetts forum, but its choice of forum carries some weight in the balance of factors.

B. <u>The Convenience of the Parties.</u>

The Court next considers "the convenience of [the] parties." 28 U.S.C. § 1404(a). For Endurance, which has its principal place of business in New York, litigating in Massachusetts is more convenient than litigating in Florida. *Cf. Blue Cross & Blue Shield of Massachusetts v. Regeneron Pharm.*, 633 F. Supp. 3d 385, 390 (D. Mass. 2022) ("it is not a hardship to travel from New York to Boston in order to appear for a civil trial" (quoting *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000))). But Endurance is a commercial entity capable of litigating in Florida, so any convenience from its proximity to Massachusetts is slight. *First State*, 583 F. Supp. 3d at 319. Two of the three JMA defendants—JMA and JMAF—are headquartered and incorporated in Massachusetts. The third JMA defendant, AMJV, is a joint venture between JMAF, a Massachusetts corporation, and Americaribe, a resident of Florida. Even if some of the JMA defendants' officers live in a different state, on the whole, it will be more convenient for the JMA defendants to litigate in their home state of Massachusetts than in Florida. Thus, Massachusetts is more convenient for the parties, but because all of the parties are sophisticated commercial entities capable of litigating their dispute in Massachusetts or Florida, the Court affords this consideration relatively little weight. *See First State*, 583 F. Supp. 3d at 319.

C. <u>The Choice of Law.</u>

The Court turns next to the law applicable to the dispute. *See id.* at 320. Massachusetts choice of law principles govern because the Commonwealth is the forum state for this lawsuit. *See*

9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020). Under those principles, a court must first consider whether a substantive conflict of law exists, because "'only actual conflicts between the laws of different jurisdictions must be resolved.'" *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 405 n.12 (2019) (quoting *Kaufman v. Richmond*, 442 Mass. 1010, 1012 (2004)). Endurance contends that Massachusetts law applies to the parties' dispute over coverage. The JMA defendants have not taken a position on which state's law applies, but posit that Massachusetts, Florida, or Maryland law might apply.

Substantively, Massachusetts and Florida law appear to conflict regarding the interpretation of the insurance policies at issue in this case. In Massachusetts, the consensus of lower courts is that, in interpreting CGL policies, "faulty workmanship" is not an "accidental occurrence," and "property damage" does not include damage due to faulty workmanship. *See Admiral Ins. Co. v. Tocci Bldg. Corp.*, 594 F. Supp. 3d 201, 205-06 (D. Mass. 2022), *appeal pending*, No. 22-1462 (1st Cir.); *Lessard v. R.C. Havens & Sons, Inc.*, No. ESCV2012-00835, 2023 WL 5126808, at *13 (Mass. Super. Feb. 03, 2023) (collecting cases); *but see Am. Home Assur. Co. v. AGM Marine Contractors, Inc.*, 467 F.3d 810, 813 (1st Cir. 2006) (explaining that it is not clear how the Supreme Judicial Court would decide this issue). The Florida Supreme Court has held, in contrast, that faulty workmanship performed by subcontractors that causes damage to a general contractor's completed project can constitute "property damage" caused by an "occurrence" under standard CGL policies. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 875 (Fla. 2007).

When there is likely an actual conflict, Massachusetts courts look to "the State with the most significant relationship to the transaction and the parties" in conducting the choice of law

analysis. *Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 467 (2018). This is a "functional" approach, guided by Sections 6, 188, and 193 of the Restatement (Second) of Conflict of Laws (1971) ("Restatement") and other relevant factors. *See Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 40 (1st Cir. 2008); *Admiral Ins. Co.*, 594 F. Supp. 3d at 206; *UBS*, 483 Mass. at 405 n.12; *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 634 n.7 (1985). When, as here, "some of these factors are either redundant or not determinative, [the court must] focus on considerations particularly relevant to the case." *Jasty*, 528 F.3d at 40 (quotation marks omitted).

The starting point in cases involving insurance contracts is Section 193 of the Restatement. *See Admiral Ins. Co.*, 594 F. Supp. 3d at 207; *Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 60 Mass. App. Ct. 492, 496 (2004). Section 193 provides that the rights created by casualty insurance policies "are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Restatement § 193. Further, "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *OneBeacon Am. Ins. Co. v. Narragansett Elec. Co.*, 90 Mass. App. Ct. 123, 125 (2016) (quoting Restatement § 193 comment b). And "[t]he insured risk generally will be located in the State where the policy holder is domiciled." *Id.*

The policy holders here are JMA, JMAF, and AMJV. ECF 1, ¶¶ 6-8. As discussed, JMA and JMAF are headquartered and incorporated in Massachusetts, while AMJV is a joint venture between JMAF, a Massachusetts corporation, and Americaribe, a citizen of Florida. In view of the

11

principally Massachusetts-based residency of the policy holders, the parties most likely understood that the insured risk would be located in Massachusetts. *See OneBeacon*, 90 Mass. App. Ct. at 125. Nevertheless, because the CGL policies provided insurance for a Florida-based project, among other projects across different states, the Court also considers the factors set forth in Sections 6 and 188 of the Restatement. *See Clarendon Nat'l*, 60 Mass. App. Ct. at 496 (if the provisions of Section 193 do not resolve the matter, "the next step is to employ the principles set forth in § 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in § 6").

Section 188 provides that, "in the absence of an effective choice of law by the parties . . . , the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement § 188(2); *see Oxford Glob. Res.*, 480 Mass. at 467. The Section 6 factors, in turn, include "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement § 6(2).

Considering this mix of factors, the Court first observes that the Endurance Policies are multistate policies. In addressing the choice of law with respect to multistate CGL policies, the Supreme Judicial Court "has articulated a clear preference for looking to the law of one state to govern the interpretation of such multistate policies." *Millipore Corp. v. Travelers Indemn. Co.*,

115 F.3d 21, 30 (1st Cir. 1997) (citing *United Techs. Corp. v. Liberty Mut. Ins. Co.*, 407 Mass. 591, 596-97 (1990); *W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572, 584-86 (1990)). "Under Massachusetts law, one jurisdiction's rules of decision must be applied to all of the sites covered under multistate CGL policies," to ensure that "the language in a single set of insurance policies . . . mean[s] the same thing in every state." *Id.* at 31. The rationale for this preference corresponds with most of the Section 6(2) factors: it "produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and uniformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transaction and the parties." *W.R. Grace & Co.*, 407 Mass. at 586.

Here, Massachusetts has the strongest interest in having its substantive law applied to the multistate CGL policies issued by Endurance to the JMA defendants. As discussed, JMA and JMAF are Massachusetts-based businesses, and AMJV's domicile is in Massachusetts and Florida. JMA does business in several states, including Massachusetts, Virginia, Florida, North Carolina, "Northern New England," and the Washington, D.C. area, but the Court lacks evidence regarding the proportion of work done in these different jurisdictions. ECF 32-3, at 2. Because no party has argued that the substantive law of New York or Delaware—Endurance's states of residency—should be applied, and the sole constant between the defendants is Massachusetts, the domicile of the parties weighs in favor of applying Massachusetts law.

The JMA defendants have presented evidence that the negotiations over the Endurance Policies occurred between Endurance's New York office and a Maryland-based insurance broker for JMA, JMAF, and AMJV. *See* ECF 34-1, ¶ 5; ECF 34-2, ¶¶ 6-9. Endurance, for its part, has

13

presented evidence that JMA's employee principally responsible for administering its insurance coverage program is in Massachusetts. ECF 32, ¶ 6. Even fully crediting the JMA defendants' account of the policy negotiations, their evidence does not weigh in favor of applying Florida law to interpret the scope of coverage for the JMA sites insured by the Endurance Policies, and it is not compelling enough to give Maryland a stronger connection to the policies than Massachusetts. Where Massachusetts has the strongest connection among the possible states to the work insured by the Endurance Policies, Endurance reasonably expected Massachusetts law to govern disputes concerning policies. Declining to take a position on the choice of law, the JMA defendants have not explained why Florida or Maryland law, rather than Massachusetts law, should control the meaning of the Endurance Policies for all disputes arising under them. Accordingly, on this preliminary record, the interpretation of the Endurance Policies is most likely governed by Massachusetts law.

### D. The Convenience of the Witnesses.

The next consideration, "the convenience of. . . [the] witnesses," 28 U.S.C. § 1404(a), is usually the most important factor. *See First State*, 583 F. Supp. 3d at 319; 15 C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure, § 3851 (4th ed. 2023).[1] To show this factor weighs in their favor, the JMA defendants, as the moving parties, must demonstrate that (1) the alternate venue is more convenient for the witnesses, (2) what the witnesses will testify to, generally, and (3) how that testimony is relevant to the merits of the dispute. *See Curtis*, 19 F.4th at 51-54 (applying this principle in the forum non conveniens context); *accord Riemer & Braunstein LLP v. Monroe Cap. Mgmt. Advisors LLC*, No. 18-cv-12401-ADB, 2019 WL 2141821, at *5 (D. Mass.

---

[1] Absent special circumstances, the Court does not consider the location of the evidence to carry much weight in the digital age. *See First State*, 583 F. Supp. 3d at 319.

14

May 16, 2019) (applying a similar principle on a Section 1404 motion). The JMA defendants contend that Florida-based subcontractors and other parties or witnesses to the Underlying Florida Action are necessary witnesses to this case. They also claim that witnesses who can testify to the procurement of the Endurance Policies reside in Maryland, California, and New York, as well as in Massachusetts. Endurance counters that the principal witnesses in this case—the officers of JMA and JMAF who can testify to the communications and circumstances surrounding the procurement of the insurance contracts—are located in Massachusetts.

"To establish an insurer's duty to defend and investigate allegations against an insured" under Massachusetts law, the insured "must demonstrate that the 'allegations in [the underlying complaint] are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms.'" *Clarendon Nat'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 954 F.3d 397, 405 (1st Cir. 2020) (quoting *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 357 (2011)). Whether an insurer has a duty to defend "'is determined by examining (1) the insurance policy; (2) the facts alleged against the insured; and (3) facts known or readily knowable by the insurer.'" *Arch Specialty Ins. Co. v. Colony Ins. Co.*, 590 F. Supp. 3d 395, 410 (D. Mass. 2022) (quoting *Metro. Prop. & Cas. Ins. Co. v. Devlin*, 95 F. Supp. 3d 278, 281 (D. Mass. 2015)). The first two categories of information are gleaned from the insurance policy itself and the complaint in the underlying litigation. *Id.* at 410-11. The third category—the facts known or reasonably knowable by the insurer—can call for consideration of extrinsic evidence. *Id.* at 411-12. But "Massachusetts courts generally use extrinsic facts (such as those set forth in demand letters to the insurer) to aid interpretation of the complaint, and not as independent factual predicates for a duty to defend." *Open Software Found., Inc. v. U.S. Fid. & Guar. Co.*, 307 F.3d 11, 15 (1st Cir. 2002); *see also Clarendon Nat'l Ins. Co.*, 954 F.3d at 407 ("[I]nformation known or readily knowable

15

does not independently trigger the duty to defend under Massachusetts law when the complaint does not adumbrate a claim." (quotation marks omitted)).

The JMA defendants have not made any argument as to how Florida-based witnesses—the subcontractors who performed superstructure work on the Brickell City Project or other parties to the Underlying Florida Action—would testify to evidence known or reasonably knowable by Endurance. *See OneBeacon*, 90 Mass. App. Ct. at 126-27 ("[T]he obligation of an insurer to defend and indemnify against [an underlying tort] claim is more appropriately determined by reference to the insurance contract itself and the circumstances of its issuance."). Having failed to draw a connection between the testimony that might be proffered by these Florida-based witnesses and the evidence that bears on Endurance's alleged duty to defend, the JMA defendants have not adequately explained why these witnesses are relevant to *this* case, as opposed to the Underlying Florida Action. *See Curtis*, 19 F.4th at 54-55 (explaining that, in the forum non conveniens context, a party must make a showing as to how witnesses are relevant). The proximity of the Southern District of Florida forum to these Florida-based witnesses does not, therefore, favor a transfer.

The location of the employee witnesses, like JMA and JMAF executives who live in Massachusetts and Florida, does not weigh in favor of either the Massachusetts or Florida forum, because courts generally discount the inconvenience to employee witnesses who can be compelled to testify by their employers. *See Regeneron*, 633 F. Supp. 3d at 390. Insofar as the parties identify non-employee witnesses to the contracting process who may be relevant, the location of these witnesses in Maryland, California, and New York does not heavily favor this forum or the Southern District of Florida. Accordingly, the JMA defendants have not demonstrated that the Florida forum would be more convenient for the potential witnesses to this case.

16

E.       Other Public Interest Considerations.

Finally, the Court considers other public interest factors raised by the parties, including the "local interest in having localized controversies decided at home." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013). Massachusetts has an interest in ensuring that insurance policies issued to businesses in the state are interpreted in a uniform and predictable manner. *See Tocci*, 594 F. Supp. 3d at 207-08; *First State*, 583 F. Supp. 3d at 320. Florida, for its part, has an interest in ensuring that those injured by torts allegedly committed within its borders have access to appropriate remedies—an interest that is particularly pronounced here, where the construction project at issue is quasi-public in nature and takes up several city blocks. *Cf. First State*, 583 F. Supp. 3d at 320 (finding that Illinois had an interest in remedying the damages caused by a waste site). But where both the Massachusetts and Florida forums have an interest in and a connection to the issues in the case, this factor is neutral and does not weigh in favor of transfer.

*       *       *

Taking stock of the various factors: the relative convenience of the parties, the plaintiff's choice of forum, and the law applicable to the case favor the Massachusetts forum. The convenience of the witnesses and the public interest considerations, including the connection of the forum to the issues in the case, are neutral. The JMA defendants have not demonstrated that any of the factors weighs in favor of transferring the case to the Southern District of Florida. They have, accordingly, failed to carry their burden to demonstrate that transfer is appropriate under 28 U.S.C. § 1404(a). And, apart from the arguments made in connection with their motion to transfer, the JMA defendants have not provided any independent reason for their request to stay this case

in favor of the case pending in the Southern District of Florida. The motion to stay will therefore be denied as well.

## CONCLUSION AND ORDER

For the foregoing reasons, the JMA defendants' motion to transfer or stay this matter, ECF 24, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 16, 2024